## BOND et al. v. BOND, Appellant.

### Division One, May 27, 1903.

**Sale of Land:** SUIT FOR SPECIFIC PERFORMANCE. In this case which is a suit by a widow and her children against the father of her deceased husband to enforce the specific performance of an alleged contract for the sale of land, which it is alleged the deceased paid for, but nevertheless the defendant would not make a deed therefor, the evidence was all parol, and it is held that the evidence is not sufficient to establish the contract.

Appeal from Ozark Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED.

*Harrison & Boone* for appellant.

(1) The evidence in this case did not authorize the court to decree specific performance of a contract. Taylor v. Williams, 45 Mo. 80; Glass v. Rowe, 103 Mo. 513; Lapham v. Dreisvogt, 36 Mo. App. 275; Strange v. Crowley, 91 Mo. 287; Taylor v. Schreader, 107 Mo. 206; Johnson v. Quarles, 46 Mo. 427; Cornet v. Bertelsman, 61 Mo. 127; 1 Greenleaf's Ev., sec. 200; Paris v. Haley, 61 Mo. 453; Veth v. Gierth, 92 Mo. 97; Pomeroy v. Fullerton, 131 Mo. 581. (2) The burden of proving the payment of the purchase money rested upon the plaintiffs. Hill v. Cheatham, 129 Mo. 71; Diel v. Stagner, 56 Mo. 535. (3) The court in making the special finding should have found the conclusion of facts separate from conclusion of law. Sec. 695, R. S. 1899; Hamill v. Talbott, 72 Mo. App. 22; Kostuba v. Miller, 137 Mo. 161; Land Company v. Bretz, 125 Mo. 418; Blount v. Spratt, 113 Mo. 48; Nicholas v. Carter, 49 Mo. App. 402.

Bond v. Bond.

*A. H. Livingston* and *T. H. Morris* for respondents.

The introduction of the bond for deed and the notes by appellant admit the sale; and if any amount of the purchase money was unpaid it devolved upon the appellant to set up such fact in his answer. The answer is a general denial, yet appellant introduced evidence to show that a valid contract was made. The answer filed, the course of appellant on the trial and the evidence of his daughter, Mrs. Nimsgern, clearly show that there was a fraudulent scheme between her and her father to defeat, if possible, the just and equitable contention of respondents. The trial court had all the witnesses before him and was carefully observant of the conduct of appellant, of the manner of his witnesses on the stand and of the studied purpose to conceal the truth  and defeat the ends of justice.

VALLIANT, J.—Plaintiffs are the widow and the minor child of William Bond, deceased, and defendant Riley Bond is the father of the deceased William. The suit is to enforce the specific performance of an alleged contract for the sale of land. The petition states that on January 1, 1897, the deceased purchased of defendant certain land, describing it, entered into possession, made valuable improvements thereon, and paid the purchase price, $350, but that no written contract or other writing in relation thereto passed between the parties, and that now defendant has taken forcible possession of the land and refuses to make a deed. The answer is a general denial. There was a finding of the issues for the plaintiffs and judgment accordingly, from which the defendant appeals.

The only question in the case is, does the proof sustain the plaintiffs' allegations? It is pretty clear from the whole record that the plaintiffs brought the suit

without any definite information on the subject in dispute. They doubtless had information that led them to the belief that there was some sort of contract between the son and his father for the conveyance of the land to the former, but just what it was they evidently did not know; they learned more about it on the trial.

The plaintiffs' testimony was to the effect that the deceased was a very young man, not more than twenty-one years old when he died. That he had married and moved on this place and lived there two or three years before his death; that he had, with the assistance of his father, cleared up 35 or 40 acres, built a log house, a barn and smokehouse, and had done some fencing. The plaintiffs' evidence on this point leaves it at least debatable whether the son made the improvements with his father's assistance or his father made them with the son's assistance. His father and his father's hired hand worked there with him and the logs that went into the building of the house were hauled from the father's home place. But that the place was improved to be used as a home for the son after his marriage, seems reasonably certain.

As to the contract for the purchase of the land and the alleged payment, the plaintiffs' evidence was of a vague character. It was to the effect that the defendant had been heard to say that he had bought this land for his son Will and that it was known in the neighborhood as Will's place. According to one witness, a brother of plaintiff Lizzie, the defendant in 1897 said that he had sold the place to Will and that Will had about paid for it except $50 which he (the father) was going to give him. Another witness, the father of plaintiff Lizzie, testified that in June, 1898, the defendant said that he had sold the place to Will and that Will had about paid for it. Another brother of plaintiff Lizzie testified that in 1899 the defendant said that he had sold the place to Will who had paid for it all but a little, and he was going to give him that so there would be no more to pay on it.

There was also testimony for the plaintiffs to the effect that a son-in-law of defendant got into trouble, and had to give bond for his appearance, and that the defendant and Will went on the bond; Will was taken as the solvent bondsman, because he was then not married and the defendant said this land was Will's. That is the gist of the plaintiffs' evidence.

The defendant introduced in evidence a bond for title dated August 9, 1898, executed by the defendant and his wife, obligating themselves to make a deed to the land to William when he should pay his two notes for $100 each, dated August 9, 1898, payable respectively in one and two years, and the defendant introduced the notes also in evidence, with testimony tending to show that they had not been paid.

These documents came as a suprise to the plaintiffs as they had never heard of them before. Defendant accounted for the bond being in his possession by the testimony of his daughter who testified that her brother William had given her the bond in July, 1899, to return to his father saying that he was unable to pay the note then about to fall due, which was the first of the two notes.

The learned chancellor discredited this evidence of the defendant and found the facts in issue for the plaintiffs.

Whilst we are disposed to defer to the chancellor's findings, since he had the parties themselves and their witnesses before him and was in better position to judge of the credit to be given them than we are, yet we do not feel justified in approving altogether his verdict on this evidence, and yet we do not feel justified in absolutely reversing the judgment.

Since the defendant's documentary evidence was admissible under the general denial, it was not incumbent on him to plead it in his answer. Nor do we mean to say that it was his duty to have informed the plaintiffs before the trial of what his proof would be; but

where knowledge of evidence that a party must know will put an entirely new phase on the case is withheld from his adversary and is sprung at the trial, he must be prepared to expect that that circumstance is liable to be weighed against his evidence and that the evidence so held in reserve may not receive at the hands of the trier of the facts the same regard as it would have received if his adversary had been apprised of it and had a chance to meet it.

The parties on both sides know this case now better than they did when they tried it, and if a new trial is had the court will be able to arrive at a conclusion that will be more free from doubt and more satisfactory to itself than is the finding under the present state of the evidence.

The judgment is reversed and the cause remanded for a new trial. All concur, except *Robinson, J.*, absent.